UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH ESPINAL VILLATORO (A 215-815-123),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-CV-05411-DC-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of Honduras, entered the United States in July 2018 at the San Ysidro port of entry. ECF No. 9-1 at 2. He was processed for expedited removal then released on parole in September 2018 and placed in removal proceedings. Id. Thereafter, Petitioner applied for asylum, obtained work authorization, and fathered two U.S. citizen children. ECF No. 1 at 19-30; 7 at 4; 10 at 4.

Petitioner's criminal history includes a March 2026 arrest for second degree arson for which no charges were entered, and a November 2023 arrest for petit larceny. ECF No. 7-1; 9-2; 9-3. The record is unclear as to the outcome of the November 2023 charges. The I-213

submitted by Respondent states that Petitioner was convicted upon a guilty plea (ECF No. 9-1 at 2), whereas the printout from New York State Division of Criminal Justice Services does not state an outcome but rather indicates an outstanding warrant. ECF No. 9-3.

On March 10, 2026 – over seven years after his initial parole from immigration custody – U.S. Immigration and Customs Enforcement (ICE) officers took Petitioner into custody pursuant to a detainer after the arson arrest. ECF No. 9-1 at 2. Petitioner is currently detained at the Mesa Verde Detention Center. ECF No. 10 at 2. Removal proceedings are pending; Petitioner is scheduled for an individual hearing on the merits of his asylum application on September 23, 2026. Id.

Petitioner filed a petition for writ of habeas corpus on July 13, 2026. ECF No. 1. After appointment of counsel, Petitioner filed an amended petition claiming that his current detention violates his Fifth Amendment right to due process and the Immigration and Nationality Act. ECF No. 7. Respondent maintains that 8 U.S.C. § 1225(b)(2)(A) governs Petitioner's detention despite the Ninth Circuit's decision in Rodriguez Vazquez v. Bostock, No. 25-6842, 2026 WL 2196424 (9th Cir. 2026) but concedes that Petitioner is "entitled to seek a custody redetermination hearing before an immigration judge." ECF No. 9. Petitioner countered that he acquired a constitutionally protected liberty interest in continued freedom from detention when he was released and that interest cannot be withdrawn without pre-deprivation process. ECF No. 10.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v.

Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

**B. Statutory Immigration Framework**

"Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The relevant detention statutes at issue here are 8 U.S.C. §§ 1225(b)(2) and 1226(a).

Under 8 U.S.C. § 1225, a noncitizen who arrives in the United States or is present in the U.S. but has not been admitted is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. 8 U.S.C. § 1225(b)(2)(A). The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.

Noncitizens who are already present in the U.S. but are subject to removal proceedings may be detained pursuant to 8 U.S.C. § 1226(a). Unlike those detained under § 1225(b)(2),

where detention is mandatory, those detained under § 1226(a) may be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

**III. Analysis**

**A. Applicable Detention Statute**

Respondent's position that Petitioner is now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) is contrary to recent Ninth Circuit precedent. Noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. July 30, 2026). Because ICE detained Petitioner after he had been present in the U.S. for over seven years, § 1226 governs his current detention.

**B. Due Process**

In reviewing Petitioner's due process challenge, the Court turns first to the question of whether Petitioner has a protected liberty interest in freedom from detention. Numerous courts, including those in this district, have found that individuals paroled and/or released from ICE custody have a protected interest in remaining out of custody. See Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026). Petitioner was released from custody on September 13, 2018. For nearly eight years, Petitioner remained "at liberty relying on that determination." F.S.S.M. v. Wofford, No. 1:25-cv-01518-TLN-AC, WL 3526671, at *5 (E.D. Cal. Dec. 9, 2025). Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

Having so found, the undersigned applies the framework articulated in Mathews v. Eldridge, 424 U.S. 319 (1976) to determine whether Petitioner's re-detention violated his due process rights. See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved, including

any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

### 1. Private Interest

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner remained out of custody for nearly eight years. During that time, he applied for asylum, a necessary preliminary step in obtaining lawful permanent residence in the U.S. ECF No. 1 at 19-30. He also maintained steady, lawful employment and two U.S. citizen children. ECF No. 7 at 4; 10 at 4. His pursuit of lawful permanent status and development of community ties support his private liberty interest. See Salazar v. Casey, No. 25-CV-2784, 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

### 2. Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner, as his re-detention required a pre-deprivation hearing in which the burden of proof lies with the government.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner's release on parole necessarily required a finding that he presented "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody

hearing to determine whether there is any valid basis for detention after a prior release. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent did not allege any changed circumstances that would justify re-detention.[1] Even if changed circumstances existed, a neutral adjudicator should determine whether such changed circumstances would now render Petitioner a danger or risk of flight. See Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.")(abrogated on other grounds.)

Respondent implies that any infringement on Petitioner's liberty interests can be adequately addressed in a bond hearing. However, a post-deprivation hearing would place the burden on *Petitioner* to demonstrate that he does not pose a danger or flight risk. See Matter of R-A-V-P-, 27 I&N Dec. 803, 804 (BIA 2020) (citing Matter of Fatahi, 26 I&N Dec. 791, 795 n.3 (BIA 2016); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006)). Moreover, Respondent has not provided any timeline for when such hearing might take place. Petitioner has already been detained for over eight months without justification. Relying on an as-yet-unscheduled post-deprivation hearing where the Petitioner must justify release – rather than where Respondent must justify deprivation of acquired liberty interest – would risk further erroneous deprivation.

**3. Government's Interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Here, though, Respondent does not argue Petitioner is a flight risk or danger to the community. They have not

[1] Respondent submitted criminal background documents indicating Petitioner has two criminal arrests, one of which did not result in formal charges and another with an undiscernible outcome. ECF No. 9-2; 9-3. Though the I-213 states that ICE arrested Petitioner pursuant to a detainer agreement with local law enforcement (ECF No. 9-1 at 2), Respondent has not represented to this Court that they re-detained Petitioner due to either of the arrests or any alleged changed circumstances. Their stated position is that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). ECF No. 9.

articulated any legitimate interest that would support arresting Petitioner without a pre-deprivation hearing. The effort and cost required to provide Petitioner with procedural safeguards before re-detention would have been minimal. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Indeed, "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing. Pinchi v. Noem, 792 F. Supp. 3d at 1036.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without first demonstrating that the detention was necessary to protect the community or ensure Petitioner's appearance. The undersigned therefore joins several district courts in concluding that a pre-deprivation hearing was required to satisfy due process. See Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The absence of such pre-deprivation hearing violates Petitioner's due process rights and warrants immediate release.

**IV. Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.
2. Respondent be ORDERED to immediately RELEASE Petitioner from custody.
    a. At the time of release, Respondent shall be required to return all of Petitioner's documents and possessions.
    b. Respondent shall not impose any additional restrictions on Petitioner unless

such restrictions are deemed necessary at a future pre-deprivation hearing.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections which include, at a minimum:
   a. Pre-deprivation notice describing the change of circumstance(s) necessitating re-detention; and
   b. A timely pre-deprivation hearing at which the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight even after consideration of alternatives to detention, and at which Petitioner shall be permitted to have his counsel present.
4. The order not address the circumstances under which the government may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.
5. The Clerk of the Court be directed to serve Mesa Verde Detention Center with a copy of any release order.
6. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

/////

/////

/////

/////

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 19, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 espi2411.imm.fnr